UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:**   (IN CHAMBERS) - APPEAL FROM BANKRUPTCY COURT
(Dkt. 1, filed on July 7, 2022)

## I.   INTRODUCTION

On December 15, 2016, plaintiff Tower Park Properties ("TPP") filed a bankruptcy court adversary proceeding against defendant Fiduciary Trust International of California ("FTIC"). Dkt. 17, Electronic Record ("ER") 1467-1527 ("Compl."). FTIC was sued in its capacity as Trustee of the Mark Hughes Family Trust (the "Trust"). Id. TPP alleged that FTIC breached a settlement agreement which TPP executed with the previous trustees of the Trust on January 3, 2013 ("the Settlement Agreement"). Id. TPP alleged claims for (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. Id.

On March 22, 2017, the United States Bankruptcy Court, the Hon. Barry Russell, presiding, stayed plaintiff's adversary proceeding pending resolution of a related Ninth Circuit appeal. On November 27, 2017, the Ninth Circuit issued its ruling, ER 1587-1589, and FTIC subsequently revived this adversary proceeding. On April 4, 2018, after the Ninth Circuit issued its opinion, FTIC moved for judgment on the pleadings. On June 7, 2018, following a hearing, the Bankruptcy Court granted defendant's motion with prejudice. ER 1636-1637.

On August 21, 2018, plaintiff filed an appeal of the Bankruptcy Court's ruling. ER 1638-1641. On February 6, 2019, this Court affirmed the Bankruptcy Court's ruling. ER 1757-1775. On January 7, 2022, the Court vacated its prior order insofar as it denied leave to amend and remanded the case to the Bankruptcy Court to "consider in the first

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**   **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

instance whether granting leave to TPP to file [an amended complaint] should be denied on the ground of futility or on other grounds, and to consider whether leave should be granted without prejudice to its consideration of a motion to dismiss the amended pleading." ER 1776-1781.

On March 31, 2022, the Bankruptcy Court granted plaintiff leave to file a first amended complaint ("FAC"). ER 1788-1789. On April 15, 2022, plaintiff filed a FAC. ER 1-59. In the FAC, TPP contends that FTIC's alleged breaches resulted in foreclosure, in 2019, on a highly valuable piece of Beverly Hills property that it previously owned. FAC ¶ 134. TPP alleges that the foreclosure occurred because TPP was unable to repay its creditors and otherwise avail itself of the benefits of the Settlement Agreement. Id. ¶ 133. On May 6, 2022, defendant filed a motion to dismiss the FAC. ER 199-223. On July 5, 2022, following a hearing, the Bankruptcy Court granted defendant's motion to dismiss the FAC. ER 1014-15.

On July 7, 2022, plaintiff appealed the Bankruptcy Court's ruling. Dkt. 1. On September 12, 2022, plaintiff filed an opening brief. Dkt. 12 ("Mot."). On October 12, 2022, defendant filed an opposition brief. Dkt. 20 ("Opp."). On October 26, 2022, plaintiff filed a reply brief. Dkt. 21 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   Plaintiff's Allegations

This matter arises out of a failed business relationship between plaintiff TPP and the Trust. Plaintiff alleges as follows.

#### 1.   The Trust and the Property

In 1997, Mark Hughes ("Mark") purchased a valuable piece of property in the hills above Beverly Hills, California ("the Property"). FAC ¶ 41. The Property included 157 acres, and although plaintiff does not allege the Property's then-value or selling price, plaintiff claims that it is "one of the most valuable pieces of undeveloped residential properties in the United States." Id. ¶ 40. It is located at 1652 Tower Grove Drive, Beverly Hills, California, 90210. ER 1468.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**   **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

When Mark died in 2000, title to the Property transferred to the Trust. FAC ¶ 41. At that time, the Trust was administered by the Trust's original Trustees: Conrad Klein, Christopher Pair, and Jack Reynolds (the "original Trustees"). Id. All three had been executives with close ties to Mark Hughes, and one, Jack Reynolds, was Mark's father. Id. ¶¶ 41, 63. In the event that the original Trustees were "unable or unwilling to serve," Mark had selected alternative co-trustees, Samantha Faulkner and Dale Sefarian, to serve instead. Id. ¶ 63. Plaintiff alleges that Mark "did not want a corporate or institutional trustee to serve if the [original Trustees] were ever removed, in part because corporate trustees are more expensive to retain." Id. Mark provided in the Trust instrument that the Trust's sole non-contingent beneficiary, Alexander Hughes ("Alexander"), would not receive the full Trust benefits until he reached 35 years old. Id. ¶ 62.

        2.    <u>The Property Purchase</u>

TPP is a limited liability company, formed under the laws of the State of Delaware. FAC ¶ 38. In 2004, TPP purchased the Property from the Trust. Id. ¶ 42. The purchase was seller-financed: the Trust and other Trust-owned-and-controlled entities, including Hughes Investment Partnership LLC ("HIP"), issued loans to TPP in order to purchase and develop the land. Id. ¶ 44S.

        3.    <u>The Settlement Agreement</u>

Meanwhile, disputes arose between TPP and the Trust-related lenders regarding TPP's acquisition of the property, and on July 11, 2008, TPP filed a petition for relief under Chapter 11 of the Bankruptcy Code. Id. ¶ 44-45. The Bankruptcy Court entered an order confirming TPP's Plan of Reorganization ("the Plan") on April 1, 2010. Id. However, the parties continued to disagree with one another throughout 2011 and 2012 about the implementation of the Plan. Id. ¶ 46. The Trust ultimately filed a motion requesting the Bankruptcy Court to (1) hold TPP in default of its obligations under the Plan, and (2) to transfer title of the Property back to the Trust on 21 days' notice (the "Trust's Default Motion"). Id. ¶¶ 46-47.

In an attempt to resolve these disputes, in late 2012 the parties entered into settlement discussions supervised by retired Judge Mitchel Goldberg. Id. ¶ 49. These discussions resulted in the Settlement Agreement, which was ultimately signed on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**    **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

January 3, 2013, by TPP, the former Trustees Klein and Reynolds, HIP, and others.  Id.;
ER 60-198.[1]

The Settlement Agreement contained multiple provisions, some of which were
conditional.  The Settlement Agreement's primary benefit to TPP were conditional
provisions whereby TPP's indebtedness to the Trust and the Hughes entities like HIP
would be reduced from over $80 million to $57.5 million (the "Conditional Provisions").
Id. ¶ 49.  To be effective, the Conditional Provisions required approval by the Bankruptcy
Court by February 15, 2013.  Id. ¶ 51.  However, the effectiveness of the Bankruptcy
Court's approval was dependent upon the absence of an appeal of the Bankruptcy Court's
approval, by any person, within the fourteen days of such approval.  Id.

Non-conditional provisions of the Settlement Agreement imposed other obligations
on both TPP and the Trustees.  Id. ¶ 52.  For example, one of the non-conditional
provisions required TPP to pay the Trust $5 million upon signing the Settlement
Agreement.  Id. ¶ 50.  This payment did not reduce TPP's other debts to the Trust or the
Hughes entities.  Id.  Upon execution of the Settlement Agreement, TPP was also
required to release and dismiss with prejudice all of its claims and defenses against the
Trust, the Hughes entities, and the Trustees.  Id.  "As a result," plaintiff alleges, "if for
any reason TPP failed to pay the debt as required under the Conditional Provisions, then
[TPP] would lose its debt reduction and repayment schedule, and the trustees, the Trust,
and the Trust Lenders could resume their litigation against [TPP], including the Trust
Lender's Default Motion, by which the Trust Lenders could take ownership of [the
Property] under the Court Deed Option.  Having released all of its claims and defenses in
these actions, [TPP] would stand virtually defenseless in court."  Id. ¶ 50.

As a hedge against these risks to TPP, the Settlement Agreement included a set of
provisions which required the original Trustees and the Trust Lenders to "cooperate with
and support the TPP Parties' efforts to seek Bankruptcy Court approval of the
Conditional Provisions" (the "Best Efforts Provisions").  Id. ¶ 52.  The Settlement
Agreement also expressly provides that "[t]his Agreement shall bind and inure to the
benefit of the Parties and each of the Parties' respective successors, assigns, heirs, and

---

[1] Although the signature pages of the Settlement Agreement indicate that the agreement
was signed on January 3, 2013, the Settlement Agreement itself states that the parties
entered into the Agreement "as of January 2, 2012."  See ER 61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**    **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

personal representatives." Id. ¶ 54. Finally, the Agreement provided that "all provisions of this Agreement other than the Conditional Provisions shall be binding, enforceable, irreversible, and non-rescindable regardless of whether or not the Bankruptcy Court Approval is ever obtained." Id. ¶ 98.

4.    Alleged Scheme to Appoint FTIC as Trustee

Plaintiff alleges that Alexander did not want to wait until he turned 35 years old to obtain full Trust benefits and "wanted to control the Trust as soon as possible." Id. ¶ 62. Because the original Trustees were Mark's "handpicked confidantes," Alexander "planned to remove [them] and install a puppet trustee in their place." Id. ¶ 64. Thus, in or around 2011, Alexander "approached FTIC with a proposal that FTIC serve as trustee of the Trust as soon as the position became available." Id. ¶ 65. FTIC agreed. Id.

Plaintiff alleges that "FTIC and Alexander thereafter strategized how best to remove the [original] Trustees." Id. ¶ 66. In 2010, Alexander filed an *ex parte* motion before the Probate Department of the Los Angeles County Superior Court (the "Probate Court") requesting that the original Trustees be replaced immediately with an interim trustee who would assume responsibility over the Trust's assets. Id. ¶ 66. The Probate Court held a trial on Alexander's motion in 2012. Id. ¶ 67.

5.    FTIC's Opposition to the Settlement Agreement

In or about late 2012, while Alexander's motion to replace the original Trustees was still pending in the Probate Court, FTIC and Alexander allegedly "learned of the Settlement Agreement and were not pleased, particularly with its Conditional Provisions." Id. ¶ 68. Plaintiff alleges that, in or about January 2013, FTIC and Alexander "jointly planned, strategized, and coordinated . . . to stop the Conditional Provisions from taking effect."[2] Id. ¶ 71.

First, FTIC and Alexander planned to file a joint objection to the Settlement Agreement before the Bankruptcy Court. Id. To provide FTIC with standing to object, Alexander filed an *ex parte* application in the Probate Court on January 10, 2013, for an order "immediately suspending" the original Trustees, with the goal of installing FTIC as

---

[2] Plaintiff alleges that "FTIC fully or substantially caused" Alexander to engage in all the subsequently described conduct. Id. ¶ 71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'    JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

successor trustee to the Trust.  Id. ¶ 74.  Plaintiff alleges, "[o]n information and belief,
[that] Alexander's *ex parte* application was filed with FTIC's direction and assistance,
and FTIC was a substantial factor in causing Alexander to file it."  Id.

On the same day, the Probate Court granted the *ex parte* application, in part, and
appointed FTIC as Trustee *ad litem* ("TAL") for the purpose of representing the Trust in
connection with the Settlement Agreement.  Id. ¶ 75; Dkt. 20-1 ER 1828-1831 ("Prob. Ct.
Order Jan 2013").[3]  The Probate Court ordered that, "[c]onsistent with its fiduciary
obligations":

> the Trustee *ad litem* shall analyze the settlement at issue in the Motion and
> independently determine whether the settlement at issue in the Motion is proper
> and in the best interests of the Trust, and shall take whatever action is necessary
> and appropriate to promote and forestall approval of the settlement agreement in
> the Bankruptcy Proceeding.

Id.; FAC ¶¶ 75-76.  The Probate Court thereby suspended the powers of the original
Trustees to approve the Settlement Agreement.  Prob. Ct. Order Jan 2013 ¶ 1.

Plaintiff additionally alleges, on information and belief, that "FTIC and Alexander
[subsequently] abandoned their initial plan to file a joint objection and opted instead to
file separate objections."  FAC ¶ 77.  On January 11, 2013, Alexander filed his objection
to the Settlement Agreement in the Bankruptcy Court "at FTIC's direction, insistence,
and counsel."  Id. ¶ 78.  On January 14, 2013, FTIC filed a "limited joinder" to
Alexander's objection, which was "tellingly dated the same day as Alexander's
objection."  Id.

FTIC allegedly "never completed the analysis of the Settlement [A]greement that
[the] Probate Court ordered it to perform."  Id. ¶ 80.  Plaintiff alleges, "[o]n information
and belief, [that] FTIC [instead] falsely represented – several times and to several courts
– that it was not opposing the Settlement Agreement unless and until it completed its
analysis."  Id. ¶ 81.  It lists several instances where FTIC has allegedly "admitted . . . it
has never completed th[e] mandated assessment, and did not do so before it caused

---

[3] TPP references the Probate Court's order in its complaint.  The Court therefore takes
judicial notice of the Probate Court's order.  Khoja v. Orexigen Therapeutics, Inc., 899
F.3d 988, 989 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'    JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

Alexander to file his objection and filed its joinder objection." Id. ¶ 82.  It contends that
"[d]iscovery in this action will reveal the collusion between FTIC and Alexander in and
around this time, but damning evidence [] has already surfaced in other proceedings and
the public record," including instances where FTIC and Alexander have appeared to
communicate extensively about FTIC's willingness to serve as trustee. Id. ¶ 83.  Plaintiff
notes that, last year, FTIC and Alexander "opposed discovery of additional evidence of
their collusion from this time on the ground that all of their communications were
privileged pursuant to a purported joint defense and common interest agreement," which
plaintiff claims is "itself further evidence of their collusion."[4] Id. ¶ 84.

On January 23, 2013, the Bankruptcy Court held a hearing on the Settlement
Agreement.[5] Id. ¶ 87.  At the hearing, FTIC's counsel argued that FTIC had standing to
object because FTIC:

> is successor-in-interest to the three trustees who signed th[e] [S]ettlement
> [A]greement.  So [FTIC] – if it were to determine that settlement is not in the
> interest of the Mark Hughes Family Trust would be the person who would be –
> have the authority to rescind th[e] [Settlement] [A]greement.

Id. ¶ 91.  Plaintiff alleges that "FTIC and Alexander believed their standing arguments
would be stronger if FTIC appeared in court as the 'successor-in-interest,' and
misrepresented its role to the [c]ourt." Id. ¶ 92.  FTIC also "falsely represented to the
Bankruptcy Court that it desired more time to review the Settlement Agreement before
making a final assessment when, in fact, it had already taken substantial steps to prevent
the Bankruptcy Court's approval." Id. ¶ 95.

The Bankruptcy Court ultimately found that FTIC and Alexander did have
standing to assert their objections, but overruled the objections and approved the
Settlement Agreement on January 23, 2013.  Id. ¶¶ 93, 96.

---

[4] The Probate Court later "rejected Alexander's assertion of purported joint privileges for
any communications between him and FTIC before FTIC was installed as interim
successor trustee." Id. ¶ 86.
[5] FTIC testified that it "anticipated it would file an appeal even before . . . the January 23,
2013 hearing." FAC ¶ 132.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

6. <u>FTIC's Appeal of the Bankruptcy Court's Approval and Subsequent Alleged Breaches</u>

*a. Alexander and FTIC's Initial Appeals*

The Settlement Agreement provided that the Bankruptcy Court's approval would only be effective if no one appealed the approval within fourteen days. Settlement Agreement § 6(a). On February 5, 2013, thirteen days after the Bankruptcy Court approved the Settlement Agreement, "FTIC caused Alexander to file a notice of appeal of that approval" to this Court. Id. ¶ 105. Because this filing fell within the fourteen-day period after the Bankruptcy Court approved the Settlement Agreement, the Conditional Provisions were rendered void *ab initio*. Id. Plaintiff alleges, "[o]n information and belief, [that] FTIC and Alexander agreed and conspired that Alexander would file his appeal within the fourteen-day period, and Alexander filed it at FTIC's direction and insistence." Id.

On February 15, 2013, after the close of the fourteen-day period, FTIC also filed an appeal of the Bankruptcy Court's order to this Court. Id. ¶ 106. Plaintiff alleges, "[o]n information and belief," that FTIC waited to file its appeal to "avoid [creating] clear evidence of a breach of the Settlement Agreement and its fiduciary obligations as described in the Probate Court's order appointing it trustee *ad litem*." Id. It also waited so that it could "point thereafter to Alexander's appeal as the reason the Conditional Provisions were void, and thereby cover its acts – taken behind the scenes – to cause Alexander to file his appeal." Id.

*b. Alexander and FTIC's Motions to Dismiss their Appeals as Moot*

FTIC and Alexander subsequently filed two motions to dismiss their own appeals on "mootness" grounds. Id. ¶ 107. Their plan "did not depend on winning the appeals or convincing an appellate court of the merits of their objections[;] [r]ather, they planned to use the fact of the appeals themselves as the basis for arguing Alexander's appeal caused the Conditional Provisions to fail. Id.

On March 18, 2013, the Probate Court granted Alexander's petition to remove the original Trustees and appointed FTIC as interim successor trustee in their place. Id. ¶ 97. Plaintiff contends that, at this time, FTIC had "undeniably assumed the obligations under the Settlement Agreement of the [original Trustees] and the Trust itself." Id. These

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:22-cv-04718-CAS | | Date | December 20, 2024 |
|---|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | | |

obligations included those provided by the Best Efforts Provisions, which became explicitly enforceable the moment the parties signed the Settlement Agreement. Id. ¶ 98.

On May 28, 2013, this Court, the Hon. George H. King presiding, dismissed Alexander's appeal after finding that Alexander lacked standing to bring his objection in the Bankruptcy Court in the first instance. Id. ¶ 108. The Court "made no legal conclusion as to whether Alexander's appeal prevented the Conditional Provisions from becoming effective and left in place the Bankruptcy Court's approval order." Id.

On July 18, 2013, Judge King remanded FTIC's appeal to the Bankruptcy Court to consider in the first instance whether the Conditional Provisions were void on account of Alexander's appeal. Id. ¶ 109; see ER 1282-87.

On June 23, 2014, the Bankruptcy Court issued a decision declining to find that the Conditional Provisions were void on account of Alexander's appeal. FAC ¶ 110; ER 1288-89. The issue was again appealed to this Court and, on August 13, 2014, Judge King remanded the matter back to the Bankruptcy Court again to "determine whether the Conditional Provisions are altogether void or whether they remain enforceable for any reason." FAC ¶ 111; ER 1290-93.

On January 8, 2015, the Bankruptcy Court held a second evidentiary hearing where FTIC argued that the Conditional Provisions were void. Id. ¶ 112. The court ultimately found that FTIC was bound by the terms of the Settlement Agreement as a successor-in-interest to the signatories because FTIC has previously represented to the Bankruptcy Court that it was, in-fact, a successor-in-interest. Id. The Bankruptcy Court held that FTIC was judicially estopped from denying it was a successor trustee and it had subsequently breached the Settlement Agreement by opposing the Settlement Agreement. Id. On February 24, 2015, the Bankruptcy Court set forth its findings in writing, stating that "the Hughes Trust, by and through its Trustee *ad litem* and Interim Successor Trustee, breached the Settlement Agreement from and after January 14, 2013 by taking actions in opposition to Bankruptcy Court Approval . . . ." ER 1294-1301. It additionally found that, "[o]nce Alexander Hughes' appeal was dismissed for lack of standing, that appeal became a nullity." FAC ¶ 113; ER 1294-1301.

On appeal, Judge King affirmed the Bankruptcy Court's ruling that Alexander's appeal did not void the Conditional Provisions, and that therefore, the provisions are still enforceable. Id. ¶ 115; ER 1323-1342. Accordingly, on August 14, 2015, Judge King

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

denied FTIC's motion to dismiss its appeal as moot and requested further briefing on the merits of FTIC's objection.  Id.

### c.   The Probate Court's Clarifying Order

On August 21, 2015, FTIC allegedly "caused Alexander to file in the Probate Court an *ex parte* application *without notice* to [TPP]" seeking clarification of the roles in which FTIC served at various times.  FAC ¶ 116-17.  In the application, Alexander specifically requested a finding, among others, that FTIC held a "separate and distinct office from that of trustee of the Trust, including the office of successor trustee," such that it "is not a successor in interest to the office of trustee and is not bound to the actions taken, obligations incurred and/or agreements made by the office of trustee."  Id. ¶ 117. On the same day, the Probate Court granted the *ex parte* application.  Id. ¶ 118.

Plaintiff alleges that FTIC withheld and misrepresented multiple material facts in Alexander's *ex parte* application.  Id.  Specifically, FTIC and Alexander failed to disclose that "Alexander completed his *ex parte* application with FTIC's cooperation and direction," and "attempted to hide from the Probate Court that FTIC was judicially estopped from denying [that] FTIC was successor trustee [when it made] its initial objections to the Settlement Agreement."  Id. ¶ 120.  Plaintiff alleges, "[o]n information and belief, [that] FTIC intentionally decided not to correct the record, appear, or act in a manner that ensured the Probate Court considered all material facts."  Id. ¶ 121.  FTIC and Alexander also "hid that FTIC had never determined whether the Settlement Agreement was in the Trust's best interest when . . . [it] caused Alexander to file his objection and filed its limited joinder objection."  Id. ¶ 122.

### d.   Subsequent Proceedings Regarding the Merits of FTIC's Appeal

While arguing the merits of its appeal before Judge King, FTIC cited the Clarifying Order as evidence that "FTIC as Trustee *ad litem* was not bound by the agreements of the conflicted [original] Trustees."  Id. ¶ 124.

On July 1, 2016, Judge King dismissed FTIC's appeal for lack of appellate standing.  Id. ¶ 125; ER 1374-89.  Specifically, Judge King held that FTIC did not have standing to appeal the Bankruptcy Court's approval of the Settlement Agreement because the approval did not "directly and adversely" affect FTIC.  Id.  He noted that FTIC could have moved to set aside the Settlement Agreement by "filing an Astacadero claim or an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

action under the Probate Code." Id.  Because FTIC did not pursue either of these actions, "it was bound by the Settlement pursuant to general principles of California trust law" from the moment it "was appointed trustee *ad litem*." FAC ¶ 127.

On August 1, 2016, FTIC appealed Judge King's decision to the Ninth Circuit. ER 1390-1391.  Plaintiff alleges that this appeal was a "further breach of the Settlement Agreement's Best Efforts Provisions." FAC ¶ 129.

On November 27, 2017, the Ninth Circuit held that FTIC's appeal was moot because the Conditional Provisions were rendered void *ab initio* by Alexander's filing of an appeal within the fourteen-day appeal period. ER 1587-89.  Plaintiff contends that, because the Ninth Circuit "did not make any findings on FTIC's appellate standing" and "did [not] vacate the earlier decisions of the Bankruptcy Court and the District Court," the "intermediate rulings of the Bankruptcy Court and the District Court continue to bind FTIC." FAC ¶ 131.  Thus, plaintiff asserts that FTIC is still judicially estopped from denying it was "successor-in-interest" to the Settlement Agreement when it made its initial objections to the Bankruptcy Court, and that FTIC breached the Settlement Agreement by filing its limited joinder, opposing the Settlement Agreement at the approval hearing, and filing and prosecuting its appeal. Id.

7.    TPP's Loss of the Property

TPP alleges that, as a result of FTIC's alleged breaches, TPP was unable to develop the Property and repay its creditors, because it could not avail itself of the Conditional Provisions, which would have significantly reduced TPP's debts. Id. ¶ 133. TPP further contends that, in 2019, its inability to obtain financing led to foreclosure and TPP's loss of the Property. Id. ¶ 134.

**B.    Recent Procedural History**

In its February 6, 2019 order described above, this Court found that FTIC could not have breached the Settlement Agreement after February 5, 2013, because "[Alexander's] appeal of the Bankruptcy Court's approval voided the Conditional Provisions on February 5, 2013." Id.  It left open the question of whether TPP should be granted leave to amend based on "allegations[s] that [Alexander] and FTIC acted 'in concert.'" Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

As noted above, on January 7, 2022, the Court vacated its prior order insofar as it denied leave to amend and remanded the case to the Bankruptcy Court to "consider in the first instance whether granting leave to TPP to file [an amended complaint] should be denied on the ground of futility or on other grounds, and to consider whether leave should be granted without prejudice to its consideration of a motion to dismiss the amended pleading." ER 1776-1781.

On April 15, 2022, plaintiff filed its operative FAC alleging claims for (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. ER 1-59. On May 6, 2022, defendant filed a motion to dismiss the FAC. ER 199-223. Following a hearing on June 21, 2022, ER 976-1013, the Bankruptcy Court granted defendant's motion to dismiss the FAC with prejudice on July 5, 2022, "for the reasons set forth in the Court's oral rulings at the hearing." ER 1014-15. At the hearing, the Bankruptcy Court referenced its 2018 finding that FTIC "was not bound in any way . . . under [the Settlement Agreement]" and thus "could not have violated any of th[ose] obligations." ER 1010-11. The Bankruptcy Court also stated: "I agree with, actually, all [of FTIC's] arguments in [FTIC's] brief… but, at the end of the day, once I make that conclusion that the defendants are not bound, that basically ends [] the question." ER 1008.

On July 7, 2022, plaintiff filed the instant appeal from the July 5, 2022 ruling. Dkt. 1.

## III.  LEGAL STANDARD

Per 28 U.S.C. § 158(a), district courts may hear appeals from the Bankruptcy Courts, "(1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of the court, from other interlocutory orders and decrees." 28 U.S.C.A. § 158 (West).

Where an appeal is brought to the district court, the appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts." Id. § 158(c)(2). A district court "acts as an appellate court" and therefore applies the same standards of review. In re Daniels–Head & Assoc., 819 F. 2d 914, 918 (9th Cir. 1987). A bankruptcy court's interpretations of law are reviewed *de novo* and its factual findings are reviewed for clear error. Blausev v. U.S. Trustee, 552

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title    | IN RE: TOWER PARK PROPERTIES, LLC | | |

F.3d 1124, 1132 (9th Cir. 2009); Salazar v. McDonald (In re Salazar), 430 F.3d 992, 994 (9th Cir. 2005).  Denial of leave to amend is reviewed for abuse of discretion. AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 949 (9th Cir. 2006).  The district court must accept the Bankruptcy Court's findings of fact unless, upon review, the district court is left with "the definite and firm conviction that a mistake has been committed."  In re Straightline Invs., Inc., 525 F.3d 870, 876 (9th Cir. 2008).  Federal Rule of Bankruptcy Procedure 8013 also provides that "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

## IV.  DISCUSSION

The parties argue three issues on appeal: (1) whether FTIC became a successor-in-interest to the original Trustees when it was appointed trustee *ad litem* by the Probate Court; and (2) if so, whether TTP plausibly alleges that FTIC breached the Best Efforts Provisions in the Settlement Agreement by causing Alexander, through collusion, to file his appeal within the fourteen-day period, thus voiding the Conditional Provisions.  Mot. at 2-3; Opp. at 11.  TPP further argues that (3) the Bankruptcy Court abused its discretion in denying it further leave to amend.  Mot. at 37.

The Court finds that, for purposes of this appeal, it is not required to reach the question of whether FTIC succeeded the original Trustees as trustee *ad litem* or otherwise.  As an initial matter, such a finding is not required by the law of the case doctrine.  Furthermore, assuming *arguendo* that Judge King's order is law of the case and that FTIC succeeded to the obligations of the original Trustees, the Court finds that TPP's claims fail as a matter of law.  This is because TPP's allegation that FTIC's conduct caused Alexander to file his appeal is not plausible, and is contradicted by other facts in the FAC.  Rather, the cause of TPP's inability to obtain financing for the Property, which resulted in its loss of the Property, was Alexander's appeal, which invalidated the Conditional Provisions and made it more difficult for TPP to repay its debts.  Thus, the Court finds that this claim was properly dismissed by the Bankruptcy Court.  See Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

Accordingly, without reaching the successor-in-interest question, the Court affirms the Bankruptcy Court's conclusions, which were expressly made in light of the Ninth Circuit's holding that the Conditional Provisions became void when Alexander filed his appeal. See ER 1008 (the Bankruptcy Court's oral ruling in 2022, as stated above, that "once I make that conclusion that the defendants are not bound, that basically ends, I think, the question, and I indicated that before in 2018"); ER 1531 (the Bankruptcy Court's oral ruling in 2018 that "I've taken one view as a pretty basic view that once that appeal was filed that ends the game"); ER 1637 (the Bankruptcy Court's order in 2018 that "judgment on the pleadings is appropriate in light of the decision… in In re Tower Park Properties, LLC, 704 F. App'x 702 (9th Cir. 2017), and for the reasons set forth in the Court's oral rulings at the hearing"). Additionally, the Court finds that the Bankruptcy Court did not err in denying TPP leave to amend, as TPP has failed to show why any additional amendment would not be futile.

### A.    Whether FTIC Became a Successor-in-Interest

TPP argues that the Court must find that FTIC succeeded to the Settlement Agreement pursuant to the law of the case doctrine.[6] Mot. at 27. TPP argues that a court abuses its discretion in failing to adhere to the law of the case absent one of five grounds, none of which exist here: 1) the first decision was clearly erroneous; 2) an intervening

---

[6] Alternatively, TPP argues that the Court must, for independent reasons, determine that FTIC became a successor trustee bound by the terms of the Settlement Agreement. Mot. at 15. TPP contends that California trust law and the Appointment Order support this finding. Id. at 17. TPP also contends that, if the Bankruptcy Court's holding stands, TPP will have been deprived of an opportunity to be heard when its property right—the right for a Trust representative to comply with the Best Efforts Provisions—was abrogated. Id. at 24. FTIC disputes that it became a successor trustee, arguing that, as a matter of law, there is a distinction between a trustee ad litem and a successor trustee. Opp. at 29. FTIC also disputes TPP's due process arguments, arguing that third parties do not have the right to receive notice of a trustee ad litem appointment proceeding. Id. at 32. The Court does not reach the question of whether FTIC succeeded to the original Trustees' obligations under the Settlement Agreement. As discussed, the Court is not required to do so under the law of the case. Further, even if FTIC succeeded to the original Trustees' obligations under the Settlement Agreement, the Court finds that TPP's claims fail as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　**'O'**　　**JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

change in the law occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. Id. at 28.

First, TPP argues that the Bankruptcy Court abused its discretion when it failed to follow Judge King's 2016 order, which found that FTIC succeeded to the Settlement Agreement as trustee *ad litem*. Id. Judge King's finding was not reversed by the Ninth Circuit's 2017 decision, TPP argues, because the Ninth Circuit only decided the mootness question. Id. While TPP recognizes that courts lack power to decide claims on the merits after a mootness determination, TPP contends that Judge King made a non-merits finding; thus, his ruling still enjoys the full force of law. Id. at 29-30.

Second, TPP argues that the Bankruptcy Court abused its discretion when it failed to follow its own ruling, from January 2013, that FTIC had standing to object to the Settlement Agreement. Id. at 30. TPP argues that the "necessary implication of this standing ruling," as recognized by the Ninth Circuit in Alexander's appeal, is that FTIC was the real party in interest. Id. TPP asserts that no other conclusion is possible, because FTIC could not have executed its duties as trustee *ad litem* unless it had standing to "promote or forestall" the Settlement Agreement's approval. Id. at 31. TPP further contends that the Trust could not have appeared in bankruptcy court as a "headless trust" without any legal representative bound to the terms of the Settlement Agreement. Id. Thus, TPP argues, the Bankruptcy Court necessarily concluded that FTIC was the real party in interest, meaning it was the successor-in-interest to the original Trustees' obligations under the Settlement Agreement. Id.

Third, TPP asserts that the Bankruptcy Court failed to follow its February 2015 ruling that FTIC succeeded to and breached the Settlement Agreement. Id. at 32. In the same order, TPP contends that the Bankruptcy Court found that FTIC was judicially estopped from denying it was the successor-in-interest. Id. According to TPP, the Ninth Circuit's mootness determination did not affect these findings, as the Bankruptcy Court had other jurisdictional bases to issue them. Id. at 32-33.

As for the Bankruptcy Court's 2018 conclusion that FTIC did not succeed to the Settlement Agreement, TPP argues that this ruling should be reversed because it is clearly erroneous, the facts in the FAC are substantially different, and it would be unjust to reward FTIC for its unlawful acts. Id. at 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL        'O'   JS-6

| Case No. | 2:22-cv-04718-CAS | | Date | December 20, 2024 |
|---|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | | |

In opposition, FTIC disputes TPP's proposition that the Court is bound by Judge
King's 2016 ruling or previous bankruptcy court rulings. Opp. at 36. FTIC argues that
because Judge King's ruling was made on appeal in a proceeding held to be moot, Judge
King lacked jurisdiction to determine that FTIC was bound to the Settlement Agreement.
Id. Judge King was not acting with "jurisdiction to determine his own jurisdiction,"
because according to FTIC, Judge King was not making a jurisdictional determination at
all. Id. at 37. Rather, FTIC argues that his finding was based on FTIC's lack of appellate
bankruptcy court standing, which is a prudential, not a jurisdictional, determination. Id.

Next, FTIC disputes TPP's argument that Judge King had the jurisdiction to
examine prudential standing and dismiss on that basis without considering mootness. Id.
Rather, according to FTIC, Judge King recognized the mootness issue and addressed it
first, as evidenced by his remand to the Bankruptcy Court. Id. FTIC argues that after
remand, Judge King ruled that the appeal was not moot, and only then did he turn to
appellate standing. Id. at 38. FTIC further states that nothing in the cases relied upon by
TPP "render[] a non-jurisdictional ruling preclusive when issued after the district court
incorrectly concludes that it has jurisdiction, as Judge King did here." Id.

FTIC then argues that the Bankruptcy Court's prior rulings did not prevent it from
revisiting an issue based on new information. Id. at 39. First, FTIC argues that the
Bankruptcy Court's January 2013 order did not state or imply that FTIC was a successor-
in-interest. Id. Second, FTIC argues that the Bankruptcy Court properly revisited its
February 2015 ruling, because it was voided for the same reason that Judge King's ruling
was voided: it was decided in the course of an appeal that the Ninth Circuit later deemed
moot. Id. at 40. FTIC then disputes each of the grounds that, according to TPP, gave the
Bankruptcy Court jurisdiction to make these rulings. Id. Finally, FTIC argues that its
counsel did not "admit" that it succeeded the original Trustees in front of the Bankruptcy
Court in 2013; FTIC's counsel stated that it was a successor-in-interest to the original
Trustees with respect to the approval motion, but not for all purposes. Id.

In reply, TPP argues that FTIC cannot "collaterally attack" the orders of other
courts that ruled that it was bound by the Settlement Agreement. Reply at 14. TPP
contends that these courts had jurisdiction to rule on the issue and that, regardless, FTIC
did not challenge these rulings on direct appeal. Id. Additionally, TPP contends that
FTIC is "wrong that Judge King did not have jurisdiction because the dismissal was
based on prudential standing." Id. at 18. Rather, TPP argues that prudential standing is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**   **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

another threshold question of justiciability, and that in a moot appeal, a court still has jurisdiction to make non-merits rulings, as Judge King did here. Id. at 18-19.

The Court finds that the law of the case doctrine does not require it to conclude that FTIC, as trustee *ad litem*, succeeded to the original Trustees' obligations under the Settlement Agreement. As an initial matter, the Court finds that even the authority cited by TPP recognizes that the "doctrine *grants a court discretion* to decline 'reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" In re Ebuehi, No. CC-21-1199-FLT, 2022 Bankr. LEXIS 622, at *19 n.3 (B.A.P. 9th Cir. Mar. 8, 2022) (emphasis added) (citing Rebel Oil Co. v. Atl. Richfield Co., 146 F.3d 1088, 1093 (9th Cir. 1998)). Thus, while the law of the case "directs a court's discretion, it does not limit [its] power." See Arizona v. California, 460 U.S. 605, 618 (1983) (describing the law of the case as "an amorphous concept").

The Court finds that the only relevant decision that is law of the case is the Ninth Circuit's decision in In re Tower Park Properties, LLC, 704 F. App'x 702 (9th Cir. 2017). The Ninth Circuit did not reach the issue of whether FTIC succeeded to the Settlement Agreement; instead, it dismissed FTIC's appeal as moot. In re Tower Park Properties, LLC, 704 F. App'x 702 (9th Cir. 2017). Thus, the Bankruptcy Court did not violate the law of the case doctrine and abuse its discretion in finding, in 2018 and 2022, that FTIC did not succeed to the Settlement Agreement. This Court is also not bound by any prior decisions, other than the Ninth Circuit's decision. As it did in 2019, this Court declines to reach the successor-in-interest issue, given its finding that even if FTIC succeeded to the Settlement Agreement, TPP's claims fail as a matter of law.

### B.   Whether TPP Plausibly Alleges that FTIC Breached the Best Efforts Provisions by Causing Alexander to File His Appeal

TPP argues that its FAC plausibly alleges that FTIC breached the Best Efforts Provisions of the Settlement Agreement in at least eleven ways between January 10, 2013 and February 5, 2013. Mot. at 35. TPP contends that it alleges "specific dates FTIC and Alexander met and planned Alexander's appeal and the existence of specific communications they had throughout this time"—facts that could lead a jury to conclude that FTIC's breaches were a substantial factor in causing Alexander's appeal and TPP's loss. Id. at 36. TPP asserts that the Bankruptcy Court erred to the extent it applied a but-for causation standard, but argues that even if such a standard applied, dismissal would not be appropriate at this stage, because causation is a fact issue. Id. Separately, TPP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**    **JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

argues that Alexander's appeal on February 5, 2013 cannot bar TPP's claims, because the alleged breaches in the FAC occurred before February 5, 2013. <u>Id.</u>

In opposition, FTIC argues that TPP's breach theory is implausible and inconsistent with its other allegations. Opp. at 41. FTIC contends that the gravamen of TPP's FAC is that FTIC's breaches caused Alexander to file his appeal and caused TPP's loss of the Property. <u>Id.</u> However, according to FTIC, the undisputed record shows that when Alexander filed his appeal, "he was already represented by counsel, had been actively involved *for years* in litigation against the co-trustees, and was independently motivated to scuttle the Settlement Agreement." <u>Id.</u> at 42.

FTIC also argues that the FAC contains allegations inconsistent with TPP's theory, as it recognizes that Alexander was "fixated" on taking the Property back and controlled FTIC as his "puppet." <u>Id.</u> at 42-43. Separately, FTIC contends that TPP's arguments about FTIC's potential to receive fee income do not make the theory plausible, because it was the Probate Court, not Alexander, "that would determine whether FTIC should later be appointed as successor trustee and that would approve any fee petitions." <u>Id.</u>

In reply, TPP argues that it sufficiently pleads causation. Reply at 4. TPP contends that the Court cannot accept as true the non-alleged fact that Alexander was the sole cause of TPP's damages. <u>Id.</u> Rather, TPP argues that the Court must accept as true the alleged fact that FTIC was at least a substantial factor in those damages. <u>Id.</u> at 5.

The Court finds that TPP's theory—that FTIC caused, or was a substantial factor in causing, Alexander's appeal—is implausible, and is contradicted by its own allegations and the Ninth Circuit's 2017 decision. A breach of contract claim requires four elements: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." <u>Oasis W. Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821 (2011). Accordingly, "[i]mplicit in the element of damage is that the defendant's breach caused the plaintiff's damage." <u>Troyk v. Farmers Grp., Inc.</u>, 171 Cal. App. 4th 1305, 1352 (2009). While the issue of causation is generally a factual question, reserved for the jury, "if there is no substantial evidence to support a verdict in plaintiff's favor if such a verdict were given, and no other reasonable conclusion is legally deducible from the evidence, the trial court is entitled to decide the issue as a matter of law." <u>Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Assn.</u>, 13 Cal. App. 5th 757, 793 (2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

Here, assuming *arguendo* that FTIC was bound to comply with the Settlement Agreement's Best Efforts Provisions beginning on January 10, 2013, and that FTIC could possibly be found to have breached the Best Efforts Provisions before the Conditional Provisions were voided on February 5, 2013, it would make no difference. Even in these circumstances, TPP could not plausibly allege that FTIC's conduct caused TPP's damages. The "substantial factor" standard of causation does not cure this deficiency, because it is equally implausible that FTIC was a substantial factor in causing TPP's losses. This is because the undisputed record shows that Alexander was independently motivated to remove the original Trustees and sought out FTIC to help him achieve this goal—not the other way around. Specifically, the FAC alleges the following:

> The [Property] was the crown jewel of the Trust, and Alexander, the Trust's sole non-contingent beneficiary and Mark Hughes' son, resented that [TPP] had acquired it. Although he would eventually enjoy the full benefits of the remaining Trust assets when he turned 35 years old—assets believed to be worth hundreds of millions of dollars—Alexander was not content to wait that long and became fixated on taking back the [Property] from [TPP]. Since he could not legally control the Trust's assets until he turned 35, Alexander planned instead to remove the then current trustees and install a puppet trustee in their place, one that would do as he instructed and help retake the [Property]. Alexander found the ideal candidate in FTIC, a corporate trust manager.

FAC ¶¶ 20-21. TPP cannot plausibly allege that FTIC was Alexander's "puppet" that would "do as he instructed," while also alleging that FTIC caused him, or was a substantial factor in causing him, to file an appeal that invalidated the Settlement Agreement. See Hernandez v. Select Portfolio, Inc., No. CV 15-01896 MMM AJWx, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations such as these are inherently implausible, and fail to comply with Rule 8, Twombly, and Iqbal."); Jackson v. Kaiser Permanente, No. CV-18-08176-DSF-PLA, 2019 WL 10893916, at *5 (C.D. Cal. Jan. 8, 2019) ("Plaintiff may plead contradictory theories of liability, but Plaintiff cannot plead contradictory facts that render Plaintiff's claims implausible.").

Furthermore, the Ninth Circuit made clear that Alexander's appeal ultimately caused the Conditional Provisions to fail, which eventually led to TPP's losses. See In re Tower Park Properties, LLC, 704 F. App'x 702 (9th Cir. 2017) ("Because Alexander Hughes appealed the [B]ankruptcy [C]ourt's approval order within the fourteen-day

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'   JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|----------|-------------------|------|-------------------|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

period, the Conditional Provisions became 'void and of no force or effect ab initio.'"). It appears to the Court that TPP's theory of causation is as follows: FTIC induced Alexander to appeal, which caused the Conditional Provisions to fail, which caused TPP to lose the benefits of debt reduction, which made it more difficult for TPP to develop the Property and repay its creditors, which led to a foreclosure on the Property, which led to TPP's loss of the Property. Given the Court's determination that the first link in this causal chain is implausible, the Court finds that TPP's theory of causation fails as a matter of law. Moreover, even if it is assumed *arguendo* that FTIC caused the Settlement Agreement to fail, TPP has not plausibly alleged that it did so in breach of its duties when its court-appointed role as trustee *ad litem* was to determine if the Settlement Agreement was in the best interests of the Trust and take "necessary and appropriate [action] to promote or forestall [its] approval." ER 496. As the Bankruptcy Court noted, FTIC's alleged actions do not appear to be inconsistent with this role. <u>See</u> ER 1009 (the Bankruptcy Court's oral finding that "I don't see anything that would be wrongful conduct."). As shown below, even if TPP were permitted to add a claim for tortious interference, FTIC's conduct would be protected as privileged. Accordingly, the Court affirms the Bankruptcy Court's finding that TPP's allegations are implausible pursuant to Rule 12(b)(6). <u>See</u> ER 1008 (the Bankruptcy Court indicating that it "agree[d] with, actually, all [of FTIC's] arguments in [FTIC's] brief); ER 219-221 (FTIC arguing, in its motion to dismiss in front of the Bankruptcy Court, that TPP's theory that FTIC caused Alexander to appeal is not plausible).

### C.   Whether the Bankruptcy Court Erred by Denying Leave to Amend

TPP argues that even if the Court concludes that FTIC did not succeed to the Settlement Agreement, TPP should have been granted leave to amend. Mot. at 37. TPP contends that, if FTIC was not a successor to the Best Efforts Provisions, then TPP was "denied the consideration it had contracted for," constituting grounds for rescission of the Settlement Agreement. <u>Id.</u> Separately, TPP argues that it is prepared to assert claims for FTIC's interference with TPP's contract and prospective economic advantage. <u>Id.</u> at 38. TPP contends that, contrary to the Bankruptcy Court's finding, only the latter requires a showing of wrongfulness, which TPP can allege through FTIC's "immediate attempts to scuttle the Settlement Agreement." <u>Id.</u> Finally, TPP asserts that FTIC failed to establish that any of its alleged conduct would fall within a privilege. <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

In opposition, FTIC argues that the Bankruptcy Court did not err in dismissing
TPP's FAC with prejudice. Opp. at 44. FTIC contends that the Bankruptcy Court was
correct in concluding that TPP had ample previous opportunities to plead its alternative
theories and that any amendment would be futile. Id. at 45. TPP could not seek damages
against FTIC on a recission claim, according to FTIC, because FTIC, as trustee *ad litem*,
received no consideration under the Settlement Agreement. Id. at 45-46. As for TPP's
tortious interference claim, FTIC argues that the Bankruptcy Court was correct in finding
that there was nothing "wrongful" about FTIC's conduct. Id. at 46. Additionally, FTIC
argues that any tort claims would be barred by California's absolute litigation privilege,
which insulates FTIC from tort liability based on actions in connection with the
bankruptcy proceeding, subsequent appeals, and any other "judicial proceeding." Id.

In reply, TPP asserts that FTIC has not shown that it would be prejudiced by
amendment. Reply at 19. TPP contends that it should not have been expected to raise all
alternative theories at once, because it expected to be able to rely on the law of the case.
Id.

The Court finds that the Bankruptcy Court did not abuse its discretion by denying
TPP leave to amend its FAC. See ER 1015 (the Bankruptcy Court's order stating that
"dismissal with prejudice is appropriate for the reasons set forth in the Court's oral
rulings at the hearing"). It appears that the Bankruptcy Court denied leave to amend
because TPP had ample opportunities to amend its complaint previously and chose not to
include its claims for rescission or tortious interference. See ER 1009 (the Bankruptcy
Court's oral finding that "I'm not going to allow an amendment because, at this stage,
there is no good reason for it not to have that included"). Additionally, the Bankruptcy
Court found that amendment would be futile, because a tortious interference claim would
be barred by California's absolute litigation privilege and would require a showing of
wrongfulness. See id. (the Bankruptcy Court's oral finding that even if TPP had pled a
tortious interference claim, "the law is quite clear that it wouldn't apply, anyway, for the
reasons as stated in the defendant's brief, and also, you need wrongful conduct. I don't
see anything that would be wrongful conduct."); ER 973 (FTIC's reply brief in front of
the Bankruptcy Court, which argued that the absolute litigation privilege applied).

The Court affirms the Bankruptcy Court's finding on both grounds. TPP
previously rejected an opportunity for leave to amend its original complaint in a March
2018 status conference in front of the Bankruptcy Court. See ER 1602. However,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 2:22-cv-04718-CAS | Date | December 20, 2024 |
|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | |

because TPP requested leave to amend at the Bankruptcy Court's hearing on FTIC's motion for judgment on the pleadings in May 2018, this Court found that the Bankruptcy Court erred in not giving TPP an opportunity to amend. ER 1780. TPP subsequently filed the instant FAC, see ER 1-59, but did not include the alternative relief (recission) or alternative claim (tortious interference) that it now seeks. Reply at 19. The Court agrees with the Bankruptcy Court that TPP could have included these claims in the original complaint or the FAC. Given that "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint," the Bankruptcy Court did not abuse its discretion in doing so here. See City of Los Angeles v. San Pedro Boat Works, 635 F.3d 440, 454 (9th Cir. 2011).

Similarly, the Bankruptcy Court did not abuse its discretion in finding that further amendment would be futile. The alleged breaches in the FAC, which TPP appears to assert as grounds for tortious conduct, include the following: that FTIC and Alexander communicated and developed their litigation strategy together; that FTIC and Alexander coordinated the filing of their objections; that FTIC worked with Alexander's counsel; that FTIC assisted Alexander in filing his objection; that FTIC filed its own objection; that FTIC appeared at the hearing to oppose the Settlement Agreement; that FTIC had "lengthy discussions" with Alexander's counsel and met with him to plan Alexander's appeal; and that FTIC assisted Alexander in filing his appeal. See FAC ¶ 83. California's absolute litigation privilege applies to "any communication that is (1) made in judicial or quasi-judicial proceedings (2) by litigants or other participants authorized by law (3) to achieve the objects of the litigation and (4) that has some connection or logical relation to the action. It attaches to statements made outside a courtroom… but applies in the prelitigation context only when imminent access to the courts is seriously proposed." Home Ins. Co. v. Zurich Ins. Co., 96 Cal. App. 4th 17, 18 (2002); Cal. Civ. Code § 47(b). Further, it applies to all torts other than malicious prosecution. Home Ins. Co., 96 Cal. App. 4th at 18. It encompasses communicative conduct, even that which also involves noncommunicative acts, like the filing of lawsuits. Kashian v. Harriman, 98 Cal. App. 4th 892, 917 (2002).

The Court finds that the alleged conduct of FTIC and Alexander, as well as FTIC and Alexander's counsel, occurred in connection with the Bankruptcy Court proceeding and subsequent appeals. These were judicial proceedings in which FTIC was an authorized participant. FTIC's duty under the Appointment Order was to "analyze the settlement at issue in the Motion [to approve the Settlement Agreement] and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:22-cv-04718-CAS | | Date | December 20, 2024 |
|---|---|---|---|---|
| Title | IN RE: TOWER PARK PROPERTIES, LLC | | | |

independently determine whether the settlement at issue in the Motion is proper and in the best interests of the Trust, and [to] take whatever action is necessary and appropriate to promote or forestall approval of the settlement agreement in the Bankruptcy Proceeding." ER 496.  Given FTIC's role under the Appointment Order, the Court finds that alleged communications between FTIC and Alexander on how to proceed regarding the Settlement Agreement were privileged.  While TPP argues that the litigation privilege would only extend to hypothetical tort claims against Alexander, see Mot. at 38, the privilege applies to any "participants authorized by law" in the bankruptcy proceeding, which, per the Appointment Order, includes FTIC.  See ER 496 (FTIC "shall take whatever action is necessary and appropriate to promote or forestall approval of the settlement agreement *in the Bankruptcy Proceeding*.") (emphasis added).  As FTIC's alleged conduct in connection with the proceedings is protected from tort liability by the litigation privilege, any amendment to plead tortious interference would be futile.  See Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend where the amendment would be futile").

**V.      CONCLUSION**

In accordance with the foregoing, the Court **AFFIRMS** the Bankruptcy Court's dismissal of TPP's FAC with prejudice.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |